UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HELEN BILEZIKJIAN, | No. CV 07-05205-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

Plaintiff asserts the following contentions of error:

1.   The Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") assessment is not supported by substantial evidence; and

2.   The ALJ's credibility determination is not supported by substantial evidence.


I

**THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

The ALJ determined that Plaintiff has severe impairments of degenerative disk disease of the cervical spine, status post surgery, and bilateral carpal tunnel syndrome. (AR 28, Finding 3.)   The ALJ found that these impairments do not meet or medically equal one of the Listings (Id., Finding 4), and then determined that Plaintiff has an RFC which permits her to "stand and walk 6 hours in an 8 hour day, sit 6 hours in an 8 hour day, changing positions briefly, 1-3 minutes each hour.   She can lift and carry 20 pounds occasionally, 10 pounds frequently.   She can do frequent but not constant fine and gross manipulation.   She can occasionally climb stairs, but not ladders. She can occasionally bend, balance, stoop and crouch, but should not kneel or crawl.   She should not do forceful gripping, grasping, twisting or turning with the bilageral [sic] upper extermiteis [sic]. She should do not extremes of neck motion, no fixed head/neck positions greater than 1 hour at a time, with brief breaks up to 3 minutes.   She should avoid unprotected heights, dangerous or fast moving machinery." (Id., Finding 6.)

At Step Four of the sequential evaluation process, the ALJ identified Plaintiff's past relevant work, and determined that her impairments do not prevent her from performing that work. (AR 28-29,

2

Findings 7, 8.)  The ALJ therefore determined that Plaintiff was not under a disability as defined in the Social Security Act ("Act"). (AR 29, Finding 9.)

Plaintiff's principal contention is that the ALJ failed to give proper credence to the opinions of her treating physician, Dr. Jason. (JS at 5, et seq.)  This is an issue often raised in Social Security litigation brought under 42 U.S.C. §405(g).  Therefore, this is an opportune moment for the Court to revisit the issue of the manner in which a treating physician's opinion is to be evaluated by the Court and then to address the particular facts of this case.

**A.   The Law Concerning Treating Physicians' Opinions.**

Plaintiff notes that the Ninth Circuit has recently reaffirmed and restated the law with regard to the manner in which the opinion of the treating physician is to be evaluated, and, in appropriate cases, compared with that of examining and non-examining physicians.  The discussion by the Court in Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) is, indeed, comprehensive, and bears lengthy quotation.  With little editing, the Court will now set forth the discussion of the Court of Appeal with regard to this issue:

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. §404.1527. If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.' Id. §404.1527(d)(2). If a treating physician's opinion is

not given 'controlling weight' because it is not
'well-supported' or because it is inconsistent with other
substantial evidence in the record, the Administration
considers specified factors in determining the weight it
will be given. Those factors include the '[l]ength of the
treatment relationship and the frequency of examination' by
the treating physician; and the 'nature and extent of the
treatment relationship' between the patient and the treating
physician. Id. §404.1527(d)(2)(i)-(ii). Generally, the
opinions of examining physicians are afforded more weight
than those of non-examining physicians, and the opinions of
examining non-treating physicians are afforded less weight
than those of treating physicians. Id. §404.1527(d)(1)-(2).
Additional factors relevant to evaluating any medical
opinion, not limited to the opinion of the treating
physician, include the amount of relevant evidence that
supports the opinion and the quality of the explanation
provided; the consistency of the medical opinion with the
record as a whole; the specialty of the physician providing
the opinion; and '[o]ther factors' such as the degree of
understanding a physician has of the Administration's
'disability programs and their evidentiary requirements' and
the degree of his or her familiarity with other information
in the case record. Id. §404.1527(d)(3)-(6).

The Administration has explained §404.1527 in Social
Security Ruling 96-2p. That ruling provides, in relevant
part:

[A] finding that a treating source medical opinion is

4

not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

S.S.R. 96-2p at 4 (Cum. Ed.1996), available at 61 Fed.Reg. 34,490, 34,491 (July 2, 1996).

In turn, we have explained:

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record. Id. (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record. Id. at 830, quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

5

stating his interpretation thereof, and making findings. _Magallanes_ [v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).

_Reddick v. Chater_, 157 F.3d 715, 725 (9th Cir.1998); accord _Thomas_, 278 F.3d at 957; _Lester_, 81 F.3d at 830-31.

When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' As we explained in _Murray_, 'In this case, ... the findings of the non-treating physician were the same as those of the treating physician. It was his conclusions that differed.... If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.' 722 F.2d at 501-02 (emphases in original). By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.' _Miller v. Heckler_, 770 F.2d 845, 849 (9th Cir.1985); _accord_ _Andrews v. Shalala_, 53 F.3d 1035, 1041 (9th Cir.1995); _Magallanes_, 881 F.2d at 751; _Allen v. Heckler_, 749 F.2d 577, 579 (9th Cir.1985) (as amended). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that

1  are supported by substantial evidence, see Allen, 749 F.2d
2  at 579, or (2) findings based on objective medical tests
3  that the treating physician has not herself considered, see
4  Andrews, 53 F.3d at 1041.'

5      If there is 'substantial evidence' in the record
6  contradicting the opinion of the treating physician, the
7  opinion of the treating physician is no longer entitled to
8  'controlling weight.' 20 C.F.R. §404.1527(d)(2). In that
9  event, the ALJ is instructed by §404.1527(d)(2) to consider
10 the factors listed in §404.1527(d)(2)-(6) in determining
11 what weight to accord the opinion of the treating physician.
12 Even when contradicted by an opinion of an examining
13 physician that constitutes substantial evidence, the
14 treating physician's opinion is 'still entitled to
15 deference.' S.S.R. 96-2p at 4, 61 Fed.Reg. at 34,491. 'In
16 many cases, a treating source's medical opinion will be
17 entitled to the greatest weight and should be adopted, even
18 if it does not meet the test for controlling weight.' Id. As
19 we stated in Reddick, 'Even if the treating doctor's opinion
20 is contradicted by another doctor, the ALJ may not reject
21 this opinion without providing "specific and legitimate
22 reasons" supported by substantial evidence in the record.'
23 157 F.3d at 725 (quoting Murray, 722 F.2d at 502)."
24 (Id. at 631-634.)

25

26   **B.   Analysis.**
27   Dr. Mark Jason has treated and "followed" Plaintiff as a patient
28 for 15 years, as he indicated in his letter "To whom it may concern,"

dated December 6, 2005. (AR 420.) Dr. Jason's records document the presence of degenerative joint disease of the cervical spine. (AR 207, 208, 386, 389.) Further, Plaintiff received an MRI on January 20, 2004 which revealed disk bulging in various degrees along her cervical spine. (AR 392-393.) Dr. Jason referred Plaintiff to Dr. Massoudi for a neurological consultation. (AR 325-327.) Dr. Massoudi recommended a disectomy and fusion at C5-6 and C6-7. Plaintiff received the surgery on January 5, 2005 (AR 291-292), and there is a follow-up report of August 3, 2005 by Dr. Massoudi. (AR 322.)

Dr. Jason completed a form entitled "Medical Assessment of Ability to do Work-Related Activities" on October 26, 2005. (AR 381-384.) In his opinion, Plaintiff was unable to lift or carry any weight, could stand and/or walk for one hour in an eight-hour workday, and could sit without interruption for one hour in an eight-hour workday. (AR 381-382.) Dr. Jason followed up this report with the aforementioned December 6, 2005 letter, in which he stated that Plaintiff's objective medical tests are consistent with symptoms of continuing severe pain in the neck, which she can hardly move, and numbness and weakness in her hands, all leading Dr. Jason to conclude that, "This makes it completely impossibly [sic] for her to function in any type of occupation due to severe numbness, pain, and weakness in her arms and hands, requiring multiple neurological procedures." (AR 420.)

While clearly accepting that portion of Dr. Jason's opinion which diagnosed Plaintiff with degenerative disk disease of the cervical spine and bilateral carpal tunnel syndrome, the ALJ did not accept Dr. Jason's functional assessments. The reasons set forth in the Decision may be summarized as follows: it is unsupported by any objective

8

medical findings; it merely reiterates Plaintiff's subjective statements of her own abilities; and, Dr. Jason is acting as an advocate and appears to be exaggerating Plaintiff's conditions for purposes of a Social Security claim. (AR 26.)

The task of the Court, therefore, is clear: to determine whether the ALJ's rejection of Dr. Jason's functional assessments is supported by substantial evidence in the record, according to the well-established principles recited by the Court.

The ALJ cited and relied on the opinions of consultative examining physicians Dr. Tamiry and Dr. Abejuela.[1]  The Court also relied upon the findings of State Agency physicians Dr. Manolakas and Dr. Amato. (AR 246-267.)

The Court will first examine Dr. Jason's conclusion that Plaintiff has cervical radiculopathy which contributes to a permanent disability.  Indeed, Dr. Jason opined that as of December 2005, Plaintiff could hardly move her neck. (AR 420.)  Dr. Jason stated in his December 2005 letter that his opinion is consistent with objective evidence in the record.  This apparently referred to testing and studies done by other physicians or providers, since no objective testing in these areas by Dr. Jason is documented in the record.  Thus, the Court must look to the evidence in the record as to these issues.  With regard to cervical radiculopathy, the ALJ pointed out that electrodiagnostic studies which were performed in November 2004

---

[1]     Dr. Abejuela performed a psychiatric examination in March 2004.  Dr. Abejuela determined that Plaintiff had no psychiatric limitation in her occupational or social functioning.  That conclusion is not challenged in this case, and therefore the Court will not incorporate Dr. Abejuela's findings, or any issue of mental capacity, in this decision.

were negative for cervical radiculopathy, but did show the presence of bilateral carpal tunnel entrapment. (AR at 25, 288, "Findings on present study do not clearly support the presence of cervical radiculopathy, at least on the right;" AR 323, "The patient has some subjective symptoms of easy fatigueability and depression, but does not report any symptoms of cervical radiculopathy.")[2]

Dr. Tamiry examined Plaintiff in March 2004. (AR 228-234.) After performing a complete physical examination (AR 230-234), Dr. Tamiry found some evidence of diminished grip strength; no evidence of atrophy; symmetric reflexes; positive Phalen's tests; and some limitation in the range of motion of the cervical and lumbar spine. (AR 234.) From a functional standpoint, Plaintiff was assessed as having a limitation to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking limited to 6 hours and sitting to 6 hours cumulatively, and avoidance of frequent bending, stooping and crouching. (Id.)

Dr. Jason's conclusion that Plaintiff can hardly move her neck is completely unsupported by the independent objective testing of Dr. Tamiry. (Compare AR at 420, 232.) Moreover, there is simply no objective testing in the record which supports Dr. Jason's rather extreme conclusion. The same goes for Dr. Jason's conclusion that Plaintiff's hands are numb and weak: Dr. Tamiry's testing also contradicted those conclusions. Dr. Tamiry found that Plaintiff had

---

[2]     The latter citation pertains to a January 18, 2005 post-surgical visit to Dr. Massoudi, who had, on January 5, 2005, performed the cervical surgery. This fact is relevant to Plaintiff's complaints that the ALJ relied upon "stale" medical opinions which predated this surgery. (See AR at 12, "The opinions of Drs. Tamiry and Manolakas were rendered approximately 10 months prior to [Plaintiff's] cervical fusion." (AR 12.)

full motion of her bilateral upper extremities, grip strength of 4/5 bilaterally, and no motor or sensory deficits.  The ALJ noted these findings in his decision. (AR 24.)

The ALJ also discredited Dr. Jason's opinion because it was based in large part on Plaintiff's own subjective statements.  Even prior to the surgery, Dr. Jason's treatment notes reflect the following concerning Plaintiff's reporting of her own condition:

> "The patient is currently in a great deal of pain.  She has constant neck pain, arm numbness, and tingling, and leg weakness... she is unable to function in any capacity... she cannot use her hands to write for more than a few moments before they become numb and painful.  She is completely unable to maintain any type of job, even on a part-time basis.  At this point, I believe [Plaintiff] is totally unemployable and should be placed on long term disability."

(AR at 397.)


Dr. Jason's treatment notes of November and December 2003 contain little in the way of objective findings, but do emphasize Plaintiff's own subjective statements regarding her pain and other matters. (AR 207-208.)

Dr. Tamiry's opinion constitutes substantial evidence, because it is based on his own independent clinical findings. (See Orn, 495 F.3d at 632.)  Therefore, Dr. Jason's opinion no longer has controlling weight, according to the same authority. (See also 20 C.F.R. §404.1527(d)(2).)  The matter comes down to whether the ALJ provided "specific and legitimate reasons," supported by substantial evidence in the record, to rely upon Dr. Tamiry instead of Dr. Jason to assess

1    Plaintiff's functional abilities.   From this analytical standpoint,

2    the Court must conclude that the ALJ's decision does pass muster.

3    Specifically, Dr. Jason's conclusions are not supported by objective

4    evidence in the record, whether his own, or that of other providers.

5    This factor provides a basis for the ALJ to have rejected his opinion.

6    (See Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1998; Brawner v.

7    Sec'y of Health and Human Servs., 839 F.2d 432, 433-434 (9th Cir.

8    1987).)   Second, it was appropriate for the ALJ to conclude that much

9    of Dr. Jason's opinion seems to be based not on objective testing, but

10   on Plaintiff's own subjective statements.   Again, this forms a proper

11   basis for the required evaluation of Dr. Jason's opinion as against

12   that of a consultative examining physician.      See Morgan v.

13   Commissioner, 169 F.3d 595, 602 (9th Cir. 1999).

14       Thus, it is not a question of the nature of the diagnosis, as

15   both Dr. Jason and Dr. Tamiry concluded that Plaintiff suffers from

16   severe degenerative disk disease of the cervical spine.   Rather, as

17   Plaintiff concedes, the relevant issue is the extent of functional

18   limitations resulting from this condition. (See JS at 12.) It is not

19   correct to say that the ALJ rejected Dr. Jason's opinion based on

20   inadequate reasons, or reasons not supported by case law and

21   regulation.   The Court finds that the ALJ relied upon and articulated

22   specific and legitimate reasons based on substantial evidence in the

23   record, and for that reason, there is no error in the ALJ's assessment

24   of Plaintiff's RFC.

25   //

26   //

27   //

28   //

1                                    II

2                  **THE ALJ'S CREDIBILITY DETERMINATION**

3                 **IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

4        Plaintiff asserts as her second issue that the ALJ's credibility

5   determination is not supported by substantial evidence.

6        The ALJ rejected Plaintiff's contention that she is unable to

7   work due to subjective symptoms for the following reasons: that she

8   has not established a medically determinable impairment which would

9   reasonably be expected to produce such limitations; that she has not

10  required extended periods of hospital confinement, emergency room

11  treatment, use of a TENS unit, participation in a pain control clinic,

12  or other extensive or significant forms of treatment commonly

13  prescribed for intense pain; that she has no abnormalities of gait,

14  nor requires the use of any assistive devices; that despite assertions

15  of chronic and debilitating pain of extended duration, she exhibits no

16  evidence of diffuse atrophy or muscle wasting, which are common

17  indicators of chronic pain; that she was able to do various household

18  chores, errands, shopping and driving (hereinafter referred to as

19  activities of daily living, or "ADLs"); that there is no credible

20  evidence of regular usage of strong medication to alleviate pain that

21  would significantly impair her ability to do basic work activities;

22  and that there is no evidence in the medical record of any significant

23  side effects from medication. (AR 26-27.)

24       The applicable standards regarding assessment of credibility are

25  well known.  As Plaintiff notes, the ALJ must set forth specific and

26  legitimate reasons in the record to depreciate a claimant's

27  credibility. (See Lewin v. Schweiker, 654 F.2d 631, 634-635 (9th Cir.

28  1981); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991)(en

                                    13

1  banc).)   For the reasons to be set forth, the Court disagrees with

2  Plaintiff's contentions.

3      First, the ALJ noted that the extent of the objective medical

4  evidence is inconsistent with the subjective limitations which

5  Plaintiff described.   The Court has already reviewed much of the

6  objective evidence in its discussion of the first issue.   There are,

7  in fact, significant contradictions between Plaintiff's claims and the

8  objective evidence.   She testified that she could only walk a block

9  before having pain and that she requires the use of an assistive

10 device when at the grocery store. (AR 585-586.)   The record belies

11 that claim, because, as Dr. Tamiry noted, Plaintiff walks with a

12 normal gait, which is not unsteady or unpredictable, and does not

13 require the use of an assistive device. (AR 230.)   Further, while

14 Plaintiff asserts severe chronic and debilitating pain of extended

15 duration, the ALJ correctly noted that the record fails to document

16 any evidence that she suffers from atrophy. (AR 26, 234.) Next, while

17 Plaintiff asserts that she takes daily pain medication (AR 577), the

18 record fails to contain any support for a finding that Plaintiff

19 regularly uses strong medication to alleviate her pain, or in any

20 event, that such medication significantly impairs her ability to work.

21 (AR 26-27.)   Further, the ALJ's notation that there is no evidence of

22 any significant side effects from medication is supported by the

23 record, and is, in fact, one of the factors set forth in the

24 applicable regulations regarding credibility assessment.

25     The ALJ's reliance upon the extent of Plaintiff's ADLs is a valid

26 factor.   While Plaintiff testified that she is unable to sit in a

27 straight-backed chair for more than ten minutes, and that she cannot

28 lift anything (AR 586-587), (which was a conclusion echoed by Dr.

Jason (AR 420)), in fact, she reported an ability to do an extensive variety of ADLs, such as household chores, errands, shopping and driving, preparation of meals, singing in the church, and the like. (See AR at 26, 101-105, 580.)  Her Daily Activities Questionnaire of January 21, 2003 indicates a rather rigorous physical lifestyle which entails her waking up early, making breakfast, taking the children to school, doing laundry, cleaning her house, helping her husband with paperwork, doing some computer work, providing some child care for her grandchildren, leaving her home two to three times a day, shopping two times a week, and driving a vehicle. (AR 101-105.) It is not required that a person be in a vegetative type state in order to find credibility in assertions of pain; rather, it is a matter of determining whether there are substantial inconsistencies between subjective claims and the objective evidence.  Moreover, contrary to Plaintiff's claim, it would certainly appear that many of Plaintiff's activities are, as the ALJ determined, consistent with an ability to do light work.

For the foregoing reasons, the Court finds no error with regard to the ALJ's credibility determination.  The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: <u>May 9, 2008</u>               _____/s/_____
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE